IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JEFFREY J. AUGUSTIN, #A0163220, | ) ) ) | CIVIL NO. 09-00316 ACK-BMK |
| Plaintiff, | ) ) | ORDER DISMISSING AMENDED COMPLAINT PURSUANT TO 28 |
| vs. | ) ) | U.S.C. §§ 1915(e)(2) (b) and 1915(A)(b)(1) |
| DEPARTMENT OF PUBLIC SAFETY,et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## ORDER DISMISSING DISMISSING AMENDED COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) and 1915(A)(b)(1)

On August 24, 2009, the Court dismissed the Hawaii Department of Public Safety and the Halawa Correctional Facility from this prisoner civil rights action.  (Doc. #11.)  Pro se plaintiff Jeffrey J. Augustin was notified that, although his Complaint appeared to state a claim, he had failed to name any defendant who was allegedly responsible for his claims.  The Court allowed Augustin forty-five days to amend the Complaint to name the Doe Defendants responsible for his claims, so that the Complaint could be served on those individuals.

Augustin has now filed an Amended Complaint, naming seven defendants, and adding additional detail to his claims. (Doc. #12.)  The Court has screened the Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) (b) and 1915(A)(b)(1), and DISMISSES the Amended Complaint for failure to state a claim, with leave granted to amend.

## I.  **LEGAL STANDARD**

The Prison Litigation Act of 1996 ("PLRA"), requires federal courts to screen all complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a), § 1915(e)(2).  The court must dismiss a complaint or portion thereof if a plaintiff raises claims that are legally frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1-2), § 1915(e)(2).

A complaint fails to state a claim on which relief may be granted if a plaintiff fails to sufficiently allege the "grounds" of his "entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (dismissing civil rights complaint); *Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009).  In *Iqbal*, the Court clarified that, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," are not entitled to an assumption of truth.  129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 555).  These types of claims should not be disregarded because they are "'unrealistic or nonsensical,'" but because they are simply legal conclusions, even if they "are cast

2

in the form of a factual allegation." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 129 S. Ct. at 1951).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949  (quoting *Twombly*, 550 U.S. at 570).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.  Even if a plaintiff's specific factual allegations may be consistent with a constitutional claim, the court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 1951.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 129 S. Ct. at 1949).

If a pleading can be cured by the allegation of other facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 127-29 (9th Cir. 2000) (*en banc*); *Moss*, 572 F.3d at 971.  The court should not, however, advise the litigant how to cure the defects.  This type of advice "would undermine district judges' role as impartial decisionmakers." *Pliler v.*

3

*Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13 (declining to decide whether the court was required to inform a litigant of deficiencies).

## II.  <u>BACKGROUND</u>

The Amended Complaint names Ms. M. Bauman, Steven K. DeWitt, Sisar Paderes, Gary Saldana, Jeremy K. Kuniyoshi, M.D., the Kapiolani Medical Center, Pali Momi ("Pali Momi"), and the State of Hawaii as defendants (collectively, "Defendants"). Augustin identifies Bauman as the Halawa Correctional Facility ("HCF") Medical Supervisor, DeWitt as an HCF physician, and Kuniyoshi as a private physician employed by Pali Momi.  Within Count II, Augustin clarifies that Saldana is an HCF physician, but he provides no information regarding Paderes.[1]  Augustin sets forth three claims, all seeking relief under § 1983, alleging deliberate indifference to his medical needs.[2]

In Count I, Augustin states that he slipped and fell on December 23, 2008, while exiting the shower at the Oahu Community Correctional Center, allegedly because there was no rubber mat in place.  Augustin claims that unnamed "staff" were negligent for

---

[1]Taking notice of its own files, the Court is aware that Paderes is, or has been, a physician employed by HCF.  *See e.g.*, *Carvelli v. Espinda, et al.*, 1:02-cv-00774-ACK-LEK; *Slingluff v. State of Hawaii et al.*, 1:06-cv-00565-SPK-LEK; *Pereira v. Paderes, et al.*, 1:04-cv-00371-SPK-LEK.

[2]Augustin consistently refers to 42 U.S.C. [§] 1983 "ss 11.11 & 10.3," as the jurisdictional basis for his claims. (*See generally* Amd. Compl.) The Court is unaware of these statutory subsections to § 1983, and Augustin does not explain.

failing to prevent this accident.  Augustin says he reported his
injury to unnamed prison officials that day, who assessed his
injuries, gave him Motrin for pain, and scheduled an appointment
for him with a facility doctor for a few days later.  Augustin
complains that he was in pain for several weeks thereafter.
Augustin alleges that this set of facts violated his
constitutional rights, and exhibited unspecified Defendants'
deliberate indifference to his medical needs.  Although Augustin
names Bauman, DeWitt, Paderes, Saldana, and Kuniyoshi in the
heading of this claim, he does not explain these Defendants
involvement in the facts alleged in Count I.  In other words,
Augustin fails to allege what action these Defendants took or
failed to take that gives rise to their liability for this claim.

In Count II, Augustin states that he was seen by Dr.
Saldana on January 6, 2009, who diagnosed a tear to Augustin's
right bicep and ligament.  Saldana requested an MRI,[3] which was
performed on January 16, 2009.  Augustin says that the MRI
confirmed Saldana's diagnosis.  Augustin claims that Saldana
"could not act on findings for corrective surgery" because
Bauman, the HCF Medical Supervisor, allegedly refused Augustin
further medical care due to "lack of funds."  (Amd. Comp., Count
II, 6 ¶ 4.)  Although Augustin also names DeWitt, Paderes,

---

[3]"MRI" stands for magnetic resonance imaging.  An MRI uses
magnetism, radio waves, and a computer to produce images of the
body. *See* http://www.medicinenet.com/mri_scan/article.htm.

Kuniyoshi, and Pali Momi in the heading of this count, he does not refer to them in the body of this claim, nor detail what actions or inactions tie these Defendants to this claim.

In Count III, Augustin states that he was taken from the prison to Pali Momi, for a consultation with Kuniyoshi. Kuniyoshi allegedly diagnosed Augustin's injuries "without fully examining the injuries visually." (*Id.*, Count III, 7 ¶ 3.) Augustin states that Kuniyoshi told him to seek a second opinion. Augustin alleges, however, that Bauman required him to pay for a second opinion, and therefore "refused further treatment." (*Id.*) Augustin also names DeWitt, Paderes, and Saldana in the heading of this claim, but again provides no facts tying them to his allegations in this claim.

Augustin asserts jurisdiction under 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his safety and medical needs.  Augustin names all Defendants in their individual and official capacities, and seeks compensatory damages and injunctive relief requiring corrective surgery and medical care for his injury.

### III.  <u>DISCUSSION</u>

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory

right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted); *West v. Atkins*, 487 U.S. 42, 48 (1988).

## A.   Eleventh Amendment Immunity

As the court carefully explained to Augustin in the August 24, 2009 Order dismissing the original Complaint, the Eleventh Amendment "bars both a federal court action for damages (or other retroactive relief) brought by a citizen against a state and federal court action brought by a citizen against a state official acting in his official capacity." *Pena v. Gardner,* 976 F.2d 469, 472 (9th Cir. 1992).  Suits for retroactive relief against state officials in their official capacity generally constitute suits against the state itself, thus, federal courts lack jurisdiction to entertain such suits. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Moreover, neither a state nor its employees acting in their official capacity is considered a "person" under § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002); *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918 (9th Cir. 2003).

The Court lacks jurisdiction to consider Augustin's claims against the State of Hawaii, and damages claims against state employees Bauman, DeWitt, Paderes, and Saldana in their official capacities.  The State of Hawaii and claims for damages

against Bauman, DeWitt, Paderes, and Saldana in their official capacities are DISMISSED without leave to amend.

**B.    Kuniyoshi and Pali Momi Are Dismissed**

Augustin alleges that Pali Momi, a private medical center, and Dr. Kuniyoshi, a private doctor practicing at Pali Momi, are liable for deprivations of his constitutional rights under § 1983.

To state a claim under § 1983, a plaintiff must allege that each defendant acted under color of state law when doing the challenged acts. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 328 (1986). "[P]rivate parties are not generally acting under color of state law." *Price v. State of Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991); *see Sutton v. Providence St. Joseph Med. Ctr*, 192 F.3d 826, 835 (9th Cir. 1999) (presuming that "private conduct does not constitute governmental action").

Private parties may be acting under color of state law if their conduct is "fairly attributable to the State" and there was an agreement between the state and the private party to deprive plaintiff's constitutional rights. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936-37 (1982); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citations omitted). Thus, a plaintiff must allege sufficient facts to show that the private person conspired

8

with or wilfully participated in a joint action with state
officials to deprive the plaintiff of his or her constitutional
rights. *Degrassi v. City of Glendora*, 207 F.3d 636, 647 (9th
Cir. 2000) (citing *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980));
*Taylor v. List*, 880 F.2d 1040, 1048 (9th Cir. 1989).

Augustin fails to allege that Kuniyoshi and Pali Momi
were acting under color of state law.  This omission alone is
sufficient to find that he has failed to state a claim against
them.  Additionally, however, the facts presented in the Amended
Complaint, even liberally construed, do not lead to a plausible
inference that Kuniyoshi or Pali Momi conspired with or willfully
participated with state actors to deprive Augustin of his
constitutional rights.  Their conduct cannot therefore be fairly
attributed to the State.  Augustin fails to state a claim under
§ 1983 against Kuniyoshi and Pali Momi and they are DISMISSED.

## C.   Failure to Link Specific Defendants to Specific Claims

Under the Federal Rules of Civil Procedure, a complaint
must contain "a short and plain statement of the claim showing
that the pleader is entitled to relief."  Fed. R. Civ. P.
8(a)(2).  Each allegation of the pleading must be "simple,
concise, and direct."  Fed. R. Civ. P. 8(e)(1).  Although the
Federal Rules adopt a flexible pleading policy, a complaint must
provide each defendant with fair notice of the claims alleged
against him or her and must contain factual allegations that

state the elements of each claim plainly and succinctly. *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir.1984).

Section 1983 plainly requires that there be an actual connection or link between the defendants' actions and the alleged deprivation suffered by a plaintiff. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). In other words, "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Although they are named in the Amended Complaint's caption, and again in the heading of each claim, Augustin fails to provide any details tying Defendants DeWitt and Paderes to any of his claims. As such, he fails to state a claim against DeWitt and Paderes because he does not provide fair notice of his claims against them. Accordingly, DeWitt and Paderes are DISMISSED.

Augustin also fails to link any Defendant to his claims in Count I. Although Augustin names Bauman, DeWitt, Paderes, Saldana, and Kuniyoshi in Count I's heading, he fails to mention any of these Defendants within the body of this claim, or explain what any specific Defendant did or did not do to violate his

10

rights as alleged in this claim.  For these reasons, as well as for the reasons discussed below, *see* §§ D & E, Count I is DISMISSED for Augustin's failure to state a claim.

## D.   Negligence Claims Are Dismissed

In Count I, Augustin states that he slipped, fell, and injured himself when exiting the shower because "staff was negligent in providing mats for safety." (Amd. Comp., Count I, 5 ¶ 3.)  He reported his injury, was given medical attention including Motrin for pain, and an appointment with a prison doctor was scheduled for a few days later.  Augustin reiterates in his "Request for Relief," that he seeks punitive damages and remedial relief "to correct injuries sustained by obvious negligence by state officials." (*Id.* Amd. Comp., Request for Relief, 8.)

Insofar as Augustin is alleging a claim for negligence in Count I or elsewhere in the Amended Complaint, it fails. Negligence is a state law cause of action.  Augustin, however, explicitly confines jurisdiction for this action to § 1983 throughout the Amended Complaint, and specifically alleges in each Count that Defendants' actions constitute deliberate indifference, presumably in violation of the Eighth Amendment to the U.S. Constitution.  Augustin does not seek supplemental jurisdiction under 28 U.S.C. § 1367(a).  The facts alleged in Count I amount to nothing more than negligence, however, or at

most, gross negligence, which is not cognizable under § 1983.
*See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 835-36 & n.4 (1994)
("[D]eliberate indifference describes a state of mind more
blameworthy than negligence."); *Toguchi v. Chung*, 391 F.3d 1051,
1057 (9th Cir. 2004) (a periodically leaking ceiling causing
water to puddle on a floor does not demonstrate a deprivation of
the "minimal civilized measure of life's necessities."); *Frost v.
Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in
claims stemming from alleged delays in administering pain
medication, treating broken nose and providing replacement
crutch, because claims did not amount to more than negligence).

Even if Augustin sought supplemental jurisdiction for
this state law claim, he fails to explain who is responsible for
the failure to provide him with a shower mat, or who is
responsible for his initial treatment, or how these facts
constitute negligence under Hawaii law.  Moreover, the facts
alleged suggest that it was not a doctor who provided the initial
care to Augustin, because he clearly states that whomever saw him
first "scheduled an appointment with a doctor a few days later."
(Amd. Comp. Count I, 5 ¶ 3.)  It is therefore unlikely that the
Defendants named in the heading of Count I, all physicians, have
responsibility for preventing slip and falls in the shower at the
prison.  As such, insofar as Augustin asserts a negligence claim

in Count I or elsewhere in the Amended Complaint, he fails to
state a claim and it is DISMISSED.

**E.**   **No Allegations Showing Deliberate Indifference**

In each Count, Augustin alleges that Defendants acted with deliberate indifference to his medical care.  A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  *See Farmer*, 511 U.S. at 832; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Lopez*, 203 F.3d at 1131.  There is an objective component and a subjective component to determine whether a prison official acted with deliberate indifference to an inmate's Eighth Amendment rights. *Farmer*, 511 U.S. at 834.  Objectively, the alleged deprivation or medical need must be "sufficiently serious."[4]  *Id.* (quotation omitted).  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting *Estelle*, 429 U.S. at 104); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Subjectively, the defendant must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

---

[4]For the purposes of this screening order, the Court accepts that Augustin's injury, and the alleged denial of care, was sufficiently, objectively serious.

and he must also draw the inference." *Farmer*, 511 U.S. at 837.
A defendant's knowledge of a substantial risk may be inferred
from circumstantial evidence. *Id.* at 842. A heightened pleading
standard applies to the subjective prong of Eighth Amendment
claims: the plaintiff must make nonconclusory allegations
supporting an inference of unlawful intent. *Alfrey v. United
States*, 276 F.3d 557, 567-68 (9th Cir. 2002) (applying standard
to Bivens Eighth Amendment claim).

Indifference to medical needs must be substantial;
inadequate treatment due to malpractice, or even gross
negligence, does not amount to a constitutional violation.
*Estelle*, 429 U.S. at 106; *Toguchi*, 391 F.3d at 1060. "It is
obduracy and wantonness, not inadvertence or error in good faith"
that violates the Eighth Amendment. *Whitley v. Albers*, 475 U.S.
312, 319 (1986). Deliberate indifference is a state of mind akin
to criminal recklessness. *Farmer*, 511 U.S. at 827.

## 1. *Count I*

The remaining facts alleged in Count I are wholly
insufficient to support a claim for deliberate indifference to
Augustin's serious medical needs. Augustin states that he
reported his injury immediately, medical personnel assessed his
injuries, gave him Motrin for his pain, and scheduled him for an
appointment with a doctor a few days later. Although Augustin
alleges he "received no medical attention for [his] injuries

other than Motrin[,]" Augustin's other statements, and the
remainder of the Amended Complaint, belie this assertion.  (Amd.
Comp., Count I, 5 ¶ 3.)  Augustin admits that he was given prompt
medical attention for his injury after reporting his accident to
prison officials.

It is unfortunate that Augustin endured pain "for a few
weeks" after his injury, however, pain is to be expected after
suffering an injury such as he alleges.  This does not turn the
care that he admits he received into a denial of adequate medical
care, or deliberate indifference to his serious medical need.
Although Augustin is dissatisfied with the initial medical
attention that he was given, this is not deliberate indifference.
A "difference of opinion between a prisoner-patient and . . .
medical authorities regarding treatment does not give rise to a
§ 1983 claim."  *Franklin v. State of Or., State Welfare Div.*, 662
F.2d 1337, 1344 (9th Cir. 1981); *Jackson v. McIntosh*, 90 F.3d
330, 332 (9th Cir. 1996) (same).  Count I is DISMISSED.

**2.   *Counts II and II: Saldana and Bauman***

Similarly, the facts alleged against Saldana and Bauman
fall short of supporting a claim that they acted with deliberate
indifference to Augustin's serious medical needs.  In Count II,
Augustin states that Saldana examined him on January 5, 2009,
diagnosed a torn right bicep and ligament, and requested an MRI.
(Amd. Comp. Count II, 6 ¶ 3.)  Augustin was given the MRI ten

16

days later, on January 16, 2009, which confirmed a torn bicep and revealed "undersurface tearing of the anterior suprasinatus tendon." (*Id.*) Augustin says that Saldana "could not act on findings for corrective sur[g]ery because of Ms. M. Bauman refused me medical care stating lack of funds." (*Id.*)

In Count III, Augustin says that he saw Kuniyoshi, who told him to get a "second opinion," but Bauman required Augustin to pay for this second opinion and "refused further treatment." (*Id.*, Count III, 7 ¶ 3.) Although Augustin alleges that Kuniyoshi told him to seek a "second" opinion, it appears that either Kuniyoshi was the "second" opinion, or that he told Augustin to seek a *third* opinion.[5] In any event, Augustin admits that he was seen by at least two doctors. Augustin further implies, by naming DeWitt and Paderes, that at least four doctors, and possibly five if Bauman treated him too, were involved in his care.

These facts do not plausibly suggest that Saldana or Bauman acted with deliberate indifference to Augustin's medical needs. As to Saldana, it is clear that he examined Augustin, made a diagnosis, and requested tests to confirm that diagnosis. From Augustin's rather sketchy timeline, it appears that Saldana then requested an outside consultation at Pali Momi with Dr.

_____

[5] Unless, of course, Augustin saw Kuniyoshi first, and Saldana was the "second" opinion, although this is not clear from the Amended Complaint, and not likely considering that Saldana is employed at HCF and Kuniyoshi is in private practice.

Kuniyoshi, a request that Bauman, as HCF Medical Supervisor, obviously approved.  Augustin does not allege that Saldana was a surgeon, capable of performing surgery, or responsible for denying him surgery.  Additionally, the Amended Complaint makes clear that Bauman was Saldana's supervisor, and that she was the decision-maker who allegedly refused to allow surgery.  Since Bauman was the decision-maker who allegedly refused to allow surgery, Saldana is absolved of any culpability in the denial of surgery.  The facts alleged in the Amended Complaint show that Saldana, however, was clearly responsive to Augustin's medical needs.

As to Bauman, the Amended Complaint is notable for what it does not say.  Augustin does not allege that Saldana, Kuniyoshi, or *any other physician* actually determined that surgery was required, or that any doctor even recommended surgery as an alternative course of treatment, and that Bauman countermanded that course of treatment "in conscious disregard of an excessive risk to [Augustin's] health."[6]  *Jackson*, 90 F.3d at 332.  Or that Bauman's alleged denial of surgery "was medically unacceptable under the circumstances."  *Id.; see also Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992) (stating that prisoner may demonstrate deliberate indifference if prison

---

[6]Even if another physician had recommended surgery, and Dr. Bauman disagreed with that diagnosis, in itself that generally would not amount to deliberate indifference.  *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

officials relied on the contrary opinion of a non-treating physician).  If this was the case, Augustin could have, and should have, stated that in his Amended Complaint.  He does not. Augustin only insinuates that corrective surgery was the proper remedy for his injury, without a clear statement that any physician told him this.  This is insufficient to state a claim.

Moreover, although Augustin alleges that Bauman refused to allow him to seek a "second" opinion because of a lack of funds, the facts alleged in the Amended Complaint make clear that this is not accurate.  First, Augustin admits that he was authorized, presumably by Bauman, to see Kuniyoshi, a private physician practicing at a private medical clinic.  Second, as noted above, by naming DeWitt and Paderes as Defendants, although he provides no facts detailing their involvement in his care, Augustin implies that these doctors treated him, or had some input into his medical care, and that he also disagreed with their care.  If true, then it appears that Augustin had a second, third, and fourth opinion regarding his injury, in addition to Saldana's initial diagnosis.

Agustin's "bare assertions" against Bauman, when combined with the other facts provided in the Amended Complaint, "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," and are not entitled to an assumption of truth.  *Iqbal*, 129 S. Ct. at 1951

(quoting *Twombly*, 550 U.S. at 555).  From the sparse facts alleged in the Amended Complaint, it appears that Augustin wanted surgery, and neither the prison doctors nor Kuniyoshi agreed (explaining why Kuniyoshi allegedly told Augustin to seek another opinion).  "A dispute between a prisoner and prison officials over the necessity and extent of medical treatment does not raise a claim under § 1983."  *See Sanchez*, 891 F.2d at 242 (stating, "A difference of opinion does not amount to a deliberate indifference to [a prisoner's] serious medical needs."); *see also Shipley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (stating, "Mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference.").

While the Court does not expect Augustin, a pro se prisoner, to provide every detail supporting his claims, he must at least provide sufficient "non-conclusory 'factual content,'" so that the Court can make a reasonable inference plausibly suggestive of a claim entitling him to relief.  *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 129 S. Ct. at 1949).  These facts do not support a finding that Saldana or Bauman acted with deliberate indifference to Augustin's injury.

### 3.   *Count III: Kuniyoshi and Pali Momi*

Finally, accepting *arguendo*, that Kuniyoshi or Pali Momi were acting under color of state law, the facts alleged

against them in Count III do not support a finding that they acted with deliberate indifference to Augustin's serious medical needs.

To state a § 1983 claim against a private corporation requires an allegation that "a deliberate policy, custom, or practice . . . was the 'moving force' behind the constitutional violation . . . suffered." *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007); *City of Canton, Ohio, v. Harris*, 489 U.S. 378, 385 (1989). Augustin says that he was seen by Dr. Kuniyoshi at Pali Momi. He sets forth no other facts regarding Pali Momi, or tying Pali Momi to his allegations. Augustin fails to allege any facts suggesting that Pali Momi has a deliberate policy, custom, or practice of refusing medical treatment to inmates or anyone else, based on improper motives, and that Dr. Kuniyoshi was following this policy. As such, Augustin fails to state a claim against Pali Momi under § 1983 for deliberate indifference to his serious medical needs.

Further, accepting all facts alleged in the Amended Complaint as true, and construing all inferences in Augustin's favor, the court cannot discern what actions Kuniyoshi took or failed to take that violated Augustin's constitutional rights. Augustin says that Kuniyoshi examined him, diagnosed his injuries, and recommended that Augustin seek another opinion. Augustin's only apparent dispute with Kuniyoshi is that Kuniyoshi

allegedly failed to "fully examine [his] injuries visually."
(Amd. Compl. 7, Count III.)  These facts do not support a
conclusion that Kuniyoshi acted with obduracy and wantonness akin
to criminal recklessness.

Augustin may disagree with Kuniyoshi's method of
diagnosing his injury, but he admits that Kuniyoshi consulted
with him and presumably reviewed the results of the MRI scan and
Saldana's recommendation, even if Kuniyoshi did not "visually"
inspect Augustin's shoulder and bicep.  Augustin, in fact, relies
on Kuniyoshi's implicit approval of Saldana's diagnosis.  A
"difference of opinion between a prisoner-patient and . . .
medical authorities regarding treatment does not give rise to a
§ 1983 claim."  *Franklin*, 662 F.2d at 1344.

In addition to being dismissed for Augustin's failure
to allege they acted under color of state law, claims against
Kuniyoshi and Pali Momi are also DISMISSED for Augustin's failure
to allege sufficient facts plausibly supporting that they acted
with deliberate indifference to his serious medical needs.

### IV.  <u>CONCLUSION</u>

1.  The Amended Complaint is DISMISSED without
prejudice for failure to state a claim.  *See* 28 U.S.C.
§§ 1915(e)(2) (b) and 1915(A)(b)(1).  Specifically: the State of
Hawaii and claims for damages against Defendants named in their
official capacities are DISMISSED with prejudice; all other

claims against Defendants in their individual capacities are
DISMISSED for the reasons set forth in this Order, with leave
granted to amend.

2.   Augustin may file a Second Amended Complaint on or
before **November 30, 2009**, that cures the pleading deficiencies
discussed in this Order, if possible.   The Second Amended
Complaint must be complete in itself without reference to the
superseded pleading.   *See* Local Rules of the District of Hawaii,
LR 10.3.   Defendants not named and claims not re-alleged in the
Second Amended Complaint will be deemed to have been waived.   *See*
*King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

3. If the Second Amended Complaint fails to cure the
deficiencies discussed in this Order, and fails to state a claim
upon which relief may be granted, it may be dismissed without
further leave to amend and may hereafter be counted as a "strike"
under 28 U.S.C. § 1915(g).   *See McHenry v. Renne*, 84 F.3d 1172,
1177-79 (9th Cir. 1996).

4.   If Augustin fails to file a Second Amended
Complaint on or before **November 30, 2009**, this action will be
AUTOMATICALLY DISMISSED, without further notice.   If Augustin
fails to timely comply with this Order, the Clerk of Court is
DIRECTED to enter judgment of dismissal of this action without
prejudice, clearly stating that the dismissal may constitute a
"strike" under 28 U.S.C. § 1915(g).

     5.   The Clerk of Court is DIRECTED to forward a copy of the court's approved prisoner civil rights complaint and instructions to Augustin so that he may comply with this Order.

     IT IS SO ORDERED.

     DATED: Honolulu, Hawaii, October 29, 2009.



_____
Alan C. Kay
Sr. United States District Judge


Augustin v. Dep't of Public Safety, et al., Civ. No. 09-00316 ACK-BMK; ORDER
DISMISSING AMENDED COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2) (b) and 1915(A)(b)(1)
prose attys\Screening\DMP\2009\Augustin 09-316 ACK (scrn Amd. C)